# Application of 18 U.S.C. § 207 to Former CIA Officials' Communications With CIA Employees on Detail to Other Agencies

The prohibition in 18 U.S.C. § 207(c), under which a former high level official, in the year after his departure, may not make "any communication to or appearance before any officer or employee" of his former agency, would apply if former CIA officials make communications to or appearances before CIA employees who are on detail to other agencies.

October 23, 2007

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
CENTRAL INTELLIGENCE AGENCY

A provision of the conflict of interest laws, 18 U.S.C. § 207(c) (2000 & Supp. IV 2004), generally forbids a former high level official, in the year after his departure, from making "any communication to or appearance before any officer or employee of the department or agency in which such person served." You have asked whether section 207(c) would apply if former officials of the Central Intelligence Agency ("CIA") make communications to or appearances before CIA employees who are on detail to other agencies.[1] We believe that it would.

## I.

The conflict of interest laws provide for a one-year "cooling off" period when a high level official leaves the government. During the one-year period after the termination of his service, the former official may not

> knowingly make[], with the intent to influence, any communication to or appearance before any officer or employee of the department or agency in which such person served within 1 year before such termination, on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency.

18 U.S.C. § 207(c)(1).[2]

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from John A. Rizzo, Senior Deputy General Counsel, CIA (Feb. 2, 2006). We also received the views of the Office of Government Ethics ("OGE"). Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, OGE (Feb. 9, 2006). The CIA later presented some additional views and information. Letter for Daniel Koffsky, Office of Legal Counsel, from Joan P. Walton, Agency Ethics Counsel, CIA (May 18, 2007) ("CIA Supplemental Letter").

[2] The provision applies to several categories of former high level officials. Of greatest relevance here, the provision reaches former officials whose pay was at least 86.5 percent of the basic pay for

The Office of Government Ethics has taken the view that this provision applies to a former official's communication to or appearance before an officer or employee of his former agency, even if, at the time of the communication or appearance, that officer or employee has been detailed to an agency other than the one in which the former official served. OGE expressed this view in *Letter to a Private Attorney*, Informal Advisory Ltr. 03x9, 2003 WL 23675085 (Nov. 26) ("OGE Advisory Letter"). That opinion relied on 18 U.S.C. § 207(g) (2000), which provides:

> For purposes of this section, a person who is detailed from one department, agency, or other entity to another department, agency, or other entity shall, during the period such person is detailed, be deemed to be an officer or employee of both departments, agencies, or such entities.

OGE concluded that, under section 207(g), "a current employee to whom communications are made is to be considered an employee of both his own agency and the agency to which he has been detailed" and that "[a]ccordingly, in order for the one-year cooling-off period to be triggered, the appearance does not have to be before the former senior employee's agency, but only before an employee of the former senior employee's agency." OGE Advisory Letter, 2003 WL 23675085, at *1, *2.

It could be argued, however, that section 207(c) does not apply to a communication to or appearance before the detailed employee because the detailed employee would be acting on behalf of an agency other than the agency in which the former senior employee worked. Under such circumstances, the former senior employee arguably would not be in a position to influence his former agency or trade on nonpublic information acquired during his government employment. In addition, it could be argued that section 207(g) makes the one-year bar applicable with respect to any agency in which a former official served in his last year with the government, including any agency to which the employee was detailed, but does not specify the employees to whom communications, or before whom appearances, are forbidden.

## II.

The central issue here is whether a CIA officer or employee, while on detail to another agency, is an "officer or employee of the [CIA]" for purposes of section 207(c)'s prohibition against a former high level official's communications to or

---

Level II of the Executive Schedule. 18 U.S.C. § 207(c)(2)(A)(ii). The provision also covers, among others, those whose pay is specified in subchapter II of chapter 53 in title 5 or who are in positions of active duty commissioned officers of the uniformed services serving in a grade or rank paid at the O-7 level or above. *Id.* § 207(c)(2)(A)(i), (iv).

appearances before "any officer or employee of the department or agency in which such person served." We believe that section 207(g) resolves this issue. It provides, in unequivocal language, that, "[f]or purposes of this section," i.e., section 207 in its entirety, an employee on detail "from one . . . agency . . . to another department, agency, or other entity shall, during the period such person is detailed, be deemed to be an officer or employee of *both* departments, agencies, or such entities." 18 U.S.C. § 207(g) (emphasis added). Thus, a CIA employee on detail is deemed an employee of the CIA, as well as an employee of the agency to which he is detailed. Nothing in the language of section 207(g) limits the circumstances in which a detailed employee has this dual status for purposes of section 207. Therefore, a prohibition that applies to a "communication to or appearance before an officer or employee of the department or agency in which [a former CIA official] served" covers an officer or employee who has been detailed from the CIA to another agency or entity.[3]

We recognize that the language of section 207(g), together with section 207(c), arguably goes beyond the precise purposes that Congress intended to achieve. The legislative history suggests that section 207(c) was originally intended to deny former officials any "improper or unfair advantage in subsequent dealings with that department or agency" in which they served. *See* S. Rep. No. 95-170, at 33 (1977). As noted above, the ability of former officials to take unfair advantage of their prior service is arguably reduced or eliminated when they communicate with employees of their former agencies who have been detailed elsewhere. But "we do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994). Moreover, the implications of the legislative history here are far from clear: a former CIA official might still be able to influence a detailee by virtue of a past association. *See* 135 Cong. Rec. 29,668 (1989) (statement of Sen. Levin) ("[T]he offense is committed if the former employee seeks official action by an agency or department employee."); *cf.* S. Rep. No. 95-170, at 33 (1977) (the cooling off period is aimed at preventing the

---

[3] Because the language of the statute is clear, the rule of lenity, calling for an ambiguous penal statute to be construed in favor of a defendant, does not apply. *See Chapman v. United States*, 500 U.S. 453, 463 (1991). Moreover, we do not believe that any particular weight should be placed on the fact that OGE had not addressed this specific issue in its regulations and informal publications. As noted above, OGE did address the issue in the 2003 OGE Advisory Letter.

Section 207(i)(1) states that the "officer or employee" to whom a communication may not be made "include[s] . . . (A) in subsections (a), (c), and (d), the President and the Vice President; and (B) in subsection (f), the President, the Vice President, and Members of Congress." The section addresses some of the officers to whom prohibited communications may not be made. We do not believe that any inference can be drawn from the silence in this section about the treatment of detailees. First, section 207(g) deals with detailees specifically, "[f]or purposes of this section." Any further treatment of detailees would have been superfluous. Second, section 207(i) concerns the status of elected officials, and its declaration that the statute "include[s]" them for some purposes hardly suggests that the provision is intended to exclude other "officer[s] or employee[s]" from the category of persons whom a former official is forbidden to contact.

use of "information, influence, and access acquired during government service at public expense, for improper and unfair advantage in subsequent dealings with that department or agency"). Even if the language of the statute does cover instances beyond the abuses at which it was aimed, "Congress appropriately enacts prophylactic rules that are intended to prevent even the appearance of wrongdoing and that may apply to conduct that has caused no actual injury to the United States." *Crandon v. United States*, 494 U.S. 152, 164 (1990). By providing in section 207(g) that a detailee is deemed an officer or employee of the agencies from which and to which he is detailed, Congress laid down a clear rule designed to prevent undue influence. Even assuming that the statute might be "applied in situations not expressly anticipated by Congress," that fact "does not demonstrate ambiguity. It demonstrates breadth." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 262 (1994).

We do not believe that the terms under which CIA officers and employees are detailed, as you have explained them to us, are so unusual that such an officer or employee is not "a person who is detailed from one department, agency, or other entity to another department, agency, or other entity" under 18 U.S.C. § 207(g). No general statutory definition of the term "detail" exists, but the Federal Personnel Manual defined a detail as "the temporary assignment of an employee to a different position for a specified period, with the employee returning to . . . regular duties at the end of the detail." *The Honorable William D. Ford, Chairman, Committee on Post Office and Civil Service*, B-224033, 1987 WL 101529, at *2 (Comp. Gen. Jan. 30) (quoting *Department of Health and Human Services Detail of Office of Community Services Employees*, 64 Comp. Gen. 370, 376 (1985) (citing Federal Personnel Manual ch. 300, § 8-1 (Inst. 262, May 7, 1981))). Even after the Federal Personnel Manual was abolished, we have continued to use this definition, which reflects the common understanding of the term. *See, e.g.*, *Applicability of 3 U.S.C. § 112 to Detailees Supporting the President's Initiative on Race*, 21 Op. O.L.C. 119, 120 (1997). Neither the extended length of CIA details nor the removal of employees from the CIA chain of command is contrary to this usual understanding. Although a "detail" may generally be short-term, there are other instances in which details, though "temporary," last for years. Under 5 U.S.C. § 3343(b) (2000), for example, an agency may "detail" an employee to an international organization for up to five years, and, upon a finding by the President, this period may be extended for three more years. *See also* 22 U.S.C. § 3983 (2000 & Supp. IV 2004) (details to American Institute in Taiwan for up to six years). The Environmental Protection Agency and the Department of the Interior detail employees to the Office of Agricultural Environmental Quality in the Department of Agriculture for up to three years. *See* 7 U.S.C. § 5402(c)(2) (2000); *see also* 22 U.S.C. § 2685(a) (2000) (reimbursement to Department of State when details exceed two years).

We understand that CIA personnel often serve particularly long details at other agencies, but we do not believe that the arrangements are so unusual in this

respect as to fall outside the term "detail" as generally understood. Indeed, when CIA employees are assigned to other agencies under specific statutes that exempt the assignments from the usual limits on duration, those statutes use the term "detail." *See* 10 U.S.C. § 444(c) (2000 & Supp. V 2005) ("details" to the National Geospatial-Intelligence Agency); 50 U.S.C. § 403v (2000) ("detail" to the National Reconnaissance Office). Similarly, "an assignment to a different position" necessarily entails some loss of control by the detailing agency, and it is doubtful that an agency detailing an employee to, for example, the National Security Council continues in any practical sense to include the employee within its own chain of command. Once again, the terms of CIA details are not so unusual as to make the term "detail" in section 207(g) inapplicable.

That the CIA detailees do not encumber the positions from which they are detailed presents a somewhat more complicated issue. The definition derived from the Federal Personnel Manual includes that the detailed "employee return[s] to his regular duties at the end of the detail." If detailees do not continue to encumber the positions they previously occupied, they may, upon their return to the agency, have different responsibilities from those previously assigned to them, *see* CIA Supplemental Letter at 4 (a detailee from the CIA "routinely returns to different duties from those she left"), and arguably that fact takes these detailees outside the usual understanding of a "detail." We would not, however, read the reference in the Federal Personnel Manual to "his regular duties" so narrowly. If a detailee were told that he would be promoted upon his return to the detailing agency, he would not thus lose the status of a detailee. The "regular duties" to which a detailee returns must mean something broader, such as full-time duties at the agency from which he came. We do not, moreover, understand the CIA to contend that the employment relationship between the agency and its employees is lost or changed during details to other federal agencies. Detailees may not return to the same positions at the agency, but they do generally return. We therefore do not believe that the fact that the employee does not encumber the position from which he was detailed would change the analysis.

We understand that construing section 207(c) to apply to communications by a former high level official to employees of his former agency, even if they are on detail to another agency, may present practical difficulties. For example, you have suggested that such a reading would require former senior agency officials to poll meeting participants to determine whether he is communicating with a detailee from his former agency. Section 207(c) applies, however, only when the former official "knowingly makes . . . any communication to or appearance before any officer or employee" of his former agency. 18 U.S.C. § 207(c)(1). By its terms, the statute appears to require, as an element of the offense, that the former official know he is speaking to an employee of his former agency. The 1989 amendments to the statute, it is true, did remove a provision under which an element of the

offense had been the former employee's knowledge that his former agency had an interest in the matter or that the matter was pending before the agency.[4]

But even if, under the current version of section 207, that particular element has been deleted, the statute on its face seems to impose liability only if the former official knows at least that the employee with whom he is communicating is from his former agency.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] Before 1989, section 207(c) extended to communications to "the department or agency in which [the former official] served as an officer or employee, or any officer or employee thereof," provided the matter was "pending before such department or agency" or the department or agency had "a direct and substantial interest." 18 U.S.C. § 207(c) (1982). In *United States v. Nofziger*, 878 F.2d 442, 444 (D.C. Cir. 1989), the District of Columbia Circuit held that the statute required knowledge that the former agency was considering the matter or had an interest in it. The Ethics Reform Act of 1989, Pub. L. No. 101-194, 103 Stat. 1716, amended the statute to remove this knowledge requirement. Senator Levin explained:

> In the recently decided case involving former Presidential aide Lyn Nofziger, the court of appeals held that under the current law, the word "knowing" modified all the elements of the offense including the provision that the particular matter was pending before the subject department or agency or that the agency had a direct and substantial interest in the particular matter. That judicial interpretation does not reflect congressional intent. We correct that misinterpretation in this bill by including a knowing standard only for the act of making the communication with the intent to influence and state that the offense is committed if the former employee seeks official action by an agency or department employee. There is no requirement, here, that the former employee know that the particular matter on which he or she is lobbying was a matter of interest or was pending before the subject agency or department. Thus, we are able to set the record straight on this matter.

135 Cong. Rec. 29,668 (1989).